IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED REFINING COMPANY INCENTIVE SAVINGS PLAN FOR HOURLY EMPLOYEES and ROBERT KAEMMERER, in his capacity as Plan Administrator, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:12-cv-238 Judge Nora Barry Fischer |
| v. | ) ) | |
| DALLAS Q. MORRISON, an individual, and MARK WILLIAM PRATT, an individual, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**NORA BARRY FISCHER, District Judge.**[1]

### I. Introduction

This is a dispute involving the rights to an account of James Jacobs ("Jacobs") in the United Refining Company Incentive Plan for Hourly Employees (the "Plan"). The Plan is a tax qualified individual account plan established under the Employee Retirement Income Security Act of 1974 ("ERISA"). Presently pending before the Court are cross-motions for summary judgment filed by Defendant Dallas Q. Morrison ("Morrison") (ECF No. 15), and Defendant Mark William Pratt ("Pratt") (ECF No. 33). Oral argument was held on November 18, 2013. Having considered the Motions, supporting Briefs, the factual record before the Court and the parties' arguments, and for the reasons set forth below, Morrison's Motion for Summary Judgment will be denied and Pratt's Motion for Summary Judgment will be granted.

### II. Factual and Procedural Background[2]

Jacobs was a retired former employee of the United Refining Company ("United Refining") and, during his employment, was a participant in the Plan. (ECF No. 1 at ¶ 9; ECF

---

[1] Chief Judge Sean J. McLaughlin was the original presiding U.S. District Judge in this matter. Following Judge McLaughlin's departure from the bench, the case was reassigned to the undersigned on August 27, 2013. (ECF No. 14).

[2] The parties elected to proceed in this case without conducting any discovery. At oral argument, both Defendants represented to the Court that the facts are undisputed and requested that the Court decide the matter on the documents submitted and the Briefs filed in the case.

No. 15 at ¶ 1). There is an accumulated vested balance of approximately $102,959.90 in the account. *Id*. Morrison is a former neighbor and friend of Jacobs, and Pratt is Jacobs' nephew.

Pursuant to the terms of the Plan, a participant may designate a beneficiary to receive his benefit upon his death. (ECF No. 1-2 at ¶ 9.5). A "participant" is defined as any employee who has met the eligibility requirements to participate in the Plan. (ECF No. 1-2 at ¶ 2.13). A "beneficiary" is defined as any person or entity designated in writing by a participant, inactive participant or beneficiary in accordance with the terms of the Plan, who is entitled to receive any benefits payable in the event of the participant's death. (ECF No. 1-2 at ¶ 2.4). Paragraph 9.5 of the Plan provides as follows:

> **9.5 Beneficiary Designation**
>
> (a) <u>Participant Designation.</u> Any Participant may designate a primary Beneficiary to receive any amount payable from the Trust Fund as a result of the Participant's death. A Participant may from time to time change such Beneficiary designation. Notwithstanding the foregoing, the Beneficiary of a Participant who is married shall be the Spouse, unless spousal consent has been obtained as described below.
>
> > (i) Spousal consent shall be in writing and shall acknowledge the receipt of material explaining such Spouse's right to be designated as Beneficiary and the effect of the alternative Beneficiary designation. Such consent shall be witnessed by a notary public. The Plan Administrator shall accept the designation of a Beneficiary other than the Spouse without the Spouse's consent only if it determines such Spouse cannot be located, or under such circumstances as may be prescribed by regulation.
> >
> > (ii) Subject to (a)(i) above, the Participant shall have the right to designate more than one primary Beneficiary and more than one contingent Beneficiary. Unless the Participant specifies otherwise, each surviving primary or contingent Beneficiary shall receive equal shares (or all to the survivor). If no designation of a primary or contingent Beneficiary is in effect at the time of the Participant's death or if no person or entity so designated shall survive the Participant, Beneficiary shall mean the Spouse of the Participant if the Participant is married on the date of death, or if the Participant is not married on said date, Beneficiary shall mean the estate of the Participant.

> (iii) Subject to (i) above, a Participant or an Inactive Participant shall have the right to revoke his or her Beneficiary designation at any time. If a Participant terminates service with the Employer or an Affiliate, any beneficiary designation in effect at the time of such termination of service shall remain in effect until such designation is revoked or the Participant's Account balances are disbursed by the Trustee.
>
> (b) <u>Beneficiary Designation.</u> A Beneficiary who is entitled to any benefits hereunder may name a successor Beneficiary to receive any unpaid benefits on the death of the first beneficiary. Designations by Beneficiaries or successor Beneficiaries shall be made according to the same rules as are applicable to designations by Participants, except that spousal consent shall not be required. In the event of the death of a Beneficiary who has so designated a successor Beneficiary, the successor Beneficiary shall be entitled to the balance of any payments remaining due. If a Beneficiary is permitted to designate a successor Beneficiary but fails to do so, the balance of any payments remaining due will be payable to the estate of the deceased Beneficiary.

(ECF No. 1-2 at ¶ 9.5).

On or about February 25, 1992, Jacobs executed a designation of beneficiary on the Plan's form, designating his nephew Pratt as the recipient of his account in the event of his death. (ECF No. 1-1 at pp. 2-3). Jacobs never executed another designation of beneficiary or executed any document revoking the designation of Pratt as beneficiary of the account. (ECF No. 1 at p. 11).

At an undetermined date in 2009, Jacobs retained an attorney to prepare a Last Will and Testament. (ECF No. 15 at ¶ 4). On June 4, 2009, Jacobs signed a Last Will and Testament naming Morrison as the sole beneficiary of his estate. (ECF No. 15-1 at pp. 1-3). On the same date, Jacobs also executed a Durable Power of Attorney ("POA"), appointing Morrison as his agent/attorney-in-fact. (ECF No. 15-1 at pp. 4-10).

The second paragraph of the POA contains the following language: "I direct my Agent to transact all my business and to manage all my property and affairs as completely as I myself might do if personally present, including but not limited to, exercising the following powers: … ." (ECF No. 15-1 at p. 5). Two of the enumerated powers as set forth in the POA state the following:

> 10. **Individual Retirement Account.** My Agent is authorized to request and receive distributions from any of my Individual Retirement Accounts; to give instructions for the purchase and sale of securities in those accounts; to execute on my behalf any powers of attorney or other instruments needed for those purposes; and to endorse notes, checks, drafts and bills of exchange, and to make contributions to those accounts.
>
> …
>
> 21. **Gifts.** My Agent is authorized to give property without consideration in any amount to any one or more of the beneficiaries of my Will and any other persons and institutions with whom I have an established pattern of giving; to continue any program of gifts that I may have begun by giving property without consideration to persons, including my Agent, outright or to trusts which I have previously created for their benefit. I give my Agent this power because it is my intention that my giving program can be continued in the event of my disability.

(ECF No. 15-1 at ¶¶ 10, 21).

On or about August 7, 2009, Jacobs was admitted to the hospital. (ECF No. 15-2 at p. 1). On or about August 14, 2009, Morrison, as agent, executed a designation of beneficiary on the Plan's form, designating himself as the beneficiary of Jacobs' account. (ECF No. 15-1 at pp. 11-12). According to the Complaint, Morrison "appeared" at the Plan's office on or about August 14, 2009 and presented the designation of beneficiary form that he had executed. (ECF No. 1 at ¶ 15).

Jacobs died on September 2, 2009 (ECF No. 15-2 at p. 1), and Morrison was appointed Executor of Jacobs' estate by the Court of Common Pleas of the 37th Judicial District, Orphans' Court Division, on September 10, 2009. (ECF No. 15-2 at p. 2). According to the Plan, on or about October 2010, Morrison claimed full rights to the account through a "purported power of attorney executed under Pennsylvania law," providing the Plan with the POA and the Last Will and Testament of Jacobs. (ECF No. 1 at ¶¶ 14; 17-18). The Plan, acting through Robert Kaemmerer, in his capacity as Plan Administrator, (the "Plan Administrator"), refused to honor Morrison's claim to the account because the Plan was unable to determine whether the POA complied with applicable Pennsylvania law since it did not contain statutory language concerning retirement plans, and because the Last Will and Testament did not expressly grant Morrison the right to the account. *Id*.

The instant lawsuit was initiated on October 2, 2012 by the Plan and the Plan Administrator for interpleader and declaratory relief naming Morrison and Pratt as Defendants. (ECF No. 1). The Plan and the Plan Administrator were dismissed from the case following a
4

case management conference held by the Court on March 18, 2013. (Minute Entry dated March 18, 2013). On August 13, 2013, Defendant Morrison filed his Motion for Summary Judgment. (ECF No. 15). On October 18, 2013, Pratt filed his Response and Cross-Motion for Summary Judgment (ECF No. 33), and Morrison filed his Supplemental Brief is support of his Motion for Summary Judgment. (ECF No. 31). The Court held oral argument on November 18, 2013, and the matter is now ripe for the Court's disposition.

### III. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.C.t 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perski*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

### IV. Discussion

Both Defendants agree that the Plan at issue was established under ERISA. As such, "every claim for relief involving an ERISA plan must be analyzed within the framework of

5

ERISA." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 (3d Cir. 2006). Morrison contends that the United States Supreme Court's recent holding in *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009), dictates that the beneficiary designation executed by him pursuant to the POA requires that the proceeds from Jacobs' retirement account be distributed to him.[3]

---

[3] In his Brief, Pratt argued that the outcome of this dispute is controlled by ERISA federal common law. *See* (ECF No. 34 at p. 3). It is well-settled that Congress has authorized federal courts to develop common law under ERISA. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Plucinski v. I.A.M. National Pension Fund*, 875 F.3d 1052, 1056 (3d Cir. 1989); *Van Orman v. American Insurance Co.*, 680 F.32d 301, 311 (3d Cir. 1982). While we are of the view that *Kennedy* controls the resolution of this dispute, we observe that reliance on federal common law does not dictate a different result. For example, in *Clouse v. Philadelphia, Bethlehem & New England RR Co.*, 787 F. Supp. 93 (E.D.Pa. 1992), the court addressed the issue of whether a general power of attorney was sufficient authority to direct a change of beneficiary in connection with an ERISA group life insurance plan. The agent in *Clouse* attempted to change the beneficiary of an ERISA-governed group life insurance policy under a general POA. The court held that the exercise of a general power of attorney was not effective to change an ERISA beneficiary where the principal had expressly granted certain specific powers but had not expressly granted the power to change beneficiaries. *Id*. at 98. In reaching this determination, the court applied Rule 37 of the Restatement (Second) of Agency, which provides that specific language governs over general language in a POA. *Id*. The court reasoned:

> The great advantage of applying Restatement § 37 to ERISA-governed plans, … is that it is consistent with a well-developed, established body of law. We have found no case that departs from § 37's specific-swallows-the-general rule. …
>
> To depart from § 37 in ERISA-governed cases would require Plan Administrators and courts to indulge in precisely the fact-intensive enterprise plaintiff invites us to embark upon here to find what Walter, Sr.'s true intention would have been. The costs of such intention expeditions necessarily would be borne by the Plan and its beneficiaries. Applying § 37, instead of starting a revolution, may help to keep costs lower. By applying a rule well-known to the insurers of plans, we avoid the inevitable additional costs of applying a rule that would be unique to employee benefit plans. Insurers would doubtless pass on such costs to the plan premium-payers.
>
> In addition, draftsmen of both plans and powers of attorney can take account of the issue raised in this case by (a) specifically mentioning in powers of attorney the authority to change beneficiary designations under employee benefits plans and (b) specifically recognizing the possibility of (a) in the plans themselves. This regime would be the analogy of what title insurance companies routinely require of powers of attorney at real estate closings. At least in this District, title companies will accept only powers of attorney specific to the subject property. The need for such unambiguous documents also exist for ERISA plans, which cover no less grave subjects for their beneficiaries.

*Clouse*, 787 F. Supp. at 98; *see also Pension Comm. Heileman-Baltimore Local IBT Pension Plan v. Bullinger*, 1992 WL 333653 at *3 (D.Md. 1992) (agent's changing of a beneficiary designation on an ERISA pension plan was found invalid because there was no specific power authorizing agent to designate a beneficiary).
Here, paragraph 10 of the POA, as set forth above, contains specific language relative to Morrison's powers regarding Jacobs' retirement accounts. (ECF No. 15-1 at ¶ 10). Applying the reasoning in *Clouse*, Morrison was only granted those specific powers, which did not include the power to change Jacobs' beneficiary designation. Such result is consistent under the maxim of *lex specialis derogat lex generalis*, the more specific controls over the general. *See e.g. In re Lazarus*, 478 F.3d 12, 18-19, (1st Cir. 2007) (noting the statutory construction principle of *lex specialis derogat lex generalis*); *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 n. 7 (S.D. Fla. 2006) (same).

In *Kennedy*, the decedent, who was a participant in a savings and investment plan governed by ERISA, designated his wife as a beneficiary of the plan, but subsequently divorced her. *Kennedy*, 555 U.S. at 288-89. The divorce decree provided that the wife was divested of any interest in the proceeds of any retirement or pension plan arising from the decedent's employment. *Id*. at 289. The decedent did not, however, change his beneficiary designation in accordance with the terms of the plan. *Id*. The decedent's estate claimed a right to the plan proceeds, citing the divorce decree. *Id*. Relying on the beneficiary designation form, the plan administrator distributed the proceeds to the ex-wife. *Id*. at 289-90. The estate subsequently sued the employer and the plan administrator, claiming that the divorce decree amounted to a waiver of the plan benefits on the ex-wife's part, and that the plan had violated ERISA by paying the benefits to the ex-wife. *Id*. at 290.

The Supreme Court held that although the divorce decree was valid, it did not operate as an ERISA waiver because "[t]he plan administrator [was] obliged to act 'in accordance with the documents and instruments governing the plan,'" and that "ERISA provides no exemption from this duty when it comes time to pay benefits." *Id*. at 300. The court stated that the claims of the decedent's estate stood or fell by "the terms of the plan" because ERISA was intended to ensure "a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, with a set of standard procedures to guide processing of claims and disbursement of benefits." *Id*. at 300 (internal quotation marks and citations omitted); *see also Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 313, 134 (3d Cir. 2012). The court further stated that "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule." *Kennedy*, 555 U.S. at 301. Any less certain rules would force plan administrators "to examine a multitude of external documents that might purport to affect the dispensation of benefits … and be drawn into litigation … over the meaning and enforceability of purported waivers." *Id*. at 301 (internal quotation marks and citations omitted). Because the decedent had never changed his beneficiary designation form, the plan's payment of the benefits to his ex-wife was in accordance with the plan documents. *Id*. at 304.

Although *Kennedy's* facts are not on all fours with the instant case, we find it instructive in resolving the issue before the Court, but not in the manner suggested by Morrison. The Plan

7

documents provide that the "participant," namely, Jacobs, may designate a beneficiary in writing to receive his benefits upon his death. The Plan documents further provide that Jacobs had the right to change and/or revoke his beneficiary designation at any time. It is undisputed that the last beneficiary designation in writing by Jacobs named Pratt as his beneficiary. It is further undisputed that Jacobs did not change or revoke this beneficiary designation in writing. Morrison claims, in essence that he is the "participant" based on the POA executed by Jacobs, and that as the "participant," he changed his beneficiary designation.

In order to honor Morrison's beneficiary designation, the Plan Administrator would be required to determine the meaning and validity of the POA, which is an exercise explicitly rejected by the court in *Kennedy*. *Kennedy*, 555 U.S. at 301; *see also Hall v. Metropolitan Life Ins. Co.*, 2013 WL 158684 at *7 (D.Minn. 2013) (holding that a decedent's will did not meet the plan's criteria for effectuating a beneficiary designation change where the plan participant was required to sign, date, and submit a "satisfactory" form in order to effectuate a change). Requiring the Plan Administrator to engage in such an exercise would run contrary to ERISA's stated policy of ensuring that plans are subject to a uniform system of law. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (stating "[o]ne of the principal goals of ERISA is to enable employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits" and that "[u]uniformity is impossible, however, if plans are subject to different legal obligations in different States.") (internal quotation marks and citations omitted). Because Pratt was the beneficiary designated by Jacobs in writing pursuant to the Plan documents, he is entitled to the proceeds of the account.[4]

---

[4] At oral argument, Morrison suggested that the Plan should be estopped from denying him Plan benefits because the Plan Administrator did not "object" to his change of beneficiary form at the time of its submission. While this argument has some appeal at first blush, Morrison cannot prevail under an estoppel theory. As an initial matter, we observe that Morrison's Answer to the Complaint contained no affirmative defense based on an estoppel theory. *See* (ECF No. 5). In addition, Morrison did not assert and/or brief an equitable estoppel theory in either his initial Motion for Summary Judgment, *see* (ECF No. 15), or in his supplemental Brief in support. *See* (ECF No. 31). In any event, in order to prevent the Plan from denying him beneficiary status under an estoppel theory, Morrison must demonstrate that a representation was made to him; he had a right to rely on the representation; and the denial of the representation would result in injury or damage to him. *Johnson v. Nanticoke Memorial Hospital, Inc.*, 700 F. Supp. 2d 670, 680 (D.Del. 2010) (citing *Rosen v. Hotel and Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery and Del. Counties, Pa.*, 637 F.2d 592, 597 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 98, 70 L.Ed.2d 213 (1981)). Parenthetically, in order to succeed on an equitable estoppel theory as a basis of recovery to redress a violation or enforce any provision of ERISA, an ERISA plaintiff must establish "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994). "Extraordinary circumstances" can be arise

Alternatively, to the extent that Morrison relies on Pennsylvania state law for the proposition that he is the proper beneficiary of Jacobs' account, we find his argument unavailing. In Pennsylvania, POA's are governed by statute, 20 Pa.C.S.A. § 5601 *et seq*. The relevant provisions here are the authority of the agent to engage in retirement plan transactions, and the authority to make gifts. 20 PA. CONS. STAT. ANN. § 5601.2; 20 PA. CONS. STAT. ANN § 5602(a)(18); 20 PA. CONS. STAT. ANN. § 5603(q). The authority to engage in retirement plan transactions may be granted to an agent in the POA by simply including the statutory language "to engage in retirement plan transactions," or, "by the inclusion of other language showing a similar intent on the part of the principal." 20 PA. CONS. STAT. ANN. § 5602(a)(18). This power is further defined in the statute as follows:

> A power to "engage in retirement plan transactions" shall mean that the agent may contribute to, withdraw from and deposit funds in any type of retirement plan (including, but not limited to, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and retirement plan, deferred compensation plan or individual retirement account), select and change payment options for the principal, make roll-over contributions from any retirement plan to other retirement plans and, in general, exercise all powers with respect to retirement plans that the principal could if present.

20 PA. CONS. STAT. ANN. § 5603(q);[5] *see also In re Estate of Slomski*, 987 A.2d 141, 143 (Pa. 2009).

In addition to the above, a principal may authorize an agent to make limited or unlimited gifts. 20 PA. CONS. STAT. ANN. § 5601.2. Limited gifts can only be made to a "principal's spouse, issue and a spouse of the principal's issue." 20 PA. CONS. STAT. ANN. § 5603(a)(2)(i). Unlimited gifts can be made only if "the principal 'specifically provid[es] for and defin[es] the

---

where there are "affirmative acts of fraud or similarly inequitable conduct by an employer," or a "network of misrepresentations that arises over an extended course of dealing between the parties," or "where particular plaintiff's are especially vulnerable." *Jenkins v. Union Labor Life Co.*, __ Fed. Appx. __, 2013 WL 5071301 at *5 (3d Cir. 2013) (citaitons omitted); *see also Kapp v. Trucking Employees of N. Jersey Welfare Fund, Inc.- Pension Fund*, 426 Fed. Appx. 126, 130 (3d Cir. 2011). Notwithstanding Morrison's failure to properly raise an estoppel issue in whatever mode, he has failed to point to any evidence on this record that would support such a theory.
[5] This provision was amended on October 27, 2010 and added the following language: "However, the agent cannot designate himself beneficiary of a retirement plan unless the agent is the spouse, child, grandchild, parent, brother or sister of the principal. An agent and beneficiary of a retirement plan shall be liable as equity and justice may require to the extent that, as determined by the court, a beneficiary designation made by the agent is inconsistent with the known or probable intent of the principal." 20 PA. CONS. STAT. ANN. § 5603(q) (as amended in 2010). This amendment, however, does not apply retroactively and therefore does not govern the instant dispute. *Prudential Ins. Co. of Am. v. Eisen*, 2012 WL 867747 at *10-12 (E.D.Pa. 2012) (holding that the 2010 amendments did not apply retroactively and that the POA was governed by the statute as it read before the amendment and as interpreted by previous Pennsylvania case law).

agent's authority in the power of attorney.'" *Slomski*, 987 A.2d at 144 (quoting 20 PA. CONS. STAT. ANN. § 5601.2(c)).

The Pennsylvania Supreme Court recently addressed the retirement plan transaction provision and gift provision in *Slomski*. In *Slomski*, Ronald Slomski executed a POA in 2000 naming his mother Rita as his agent, specifically authorizing her to "engage in retirement plan transactions." *Slomski*, 987 A.2d at 141-42. In 2005, Ronald named his wife as the primary beneficiary of his qualified retirement plan account through his employer, with his stepdaughters as contingent beneficiaries. *Id*. at p. 142.[6] His wife died in July 2006, and on December 12, 2006, Rita used the POA to change the beneficiaries to Ronald's two siblings. *Id*. Ronald died on December 28, 2006, and his account had a value of approximately $190,000.00. *Id*. Ronald's will left his estate in equal shares to his two stepdaughters. *Id*.

The trial court held that Rita had the authority to change the beneficiary, noting that the Pennsylvania POA statute included broad general language, empowering Rita to deal with retirement matters, and to exercise all powers with respect to retirement plans that the principal could if present pursuant to 20 PA. CONS. STAT. ANN. § 5603(q). *Id*. at p. 142. The trial court further concluded that the change of beneficiary was not a gift, but rather an expectancy interest. *Id*. The Superior Court reversed, and characterized the changing of a beneficiary as a gift, not a retirement plan transaction. *Id*. The Superior Court concluded that the changing of a beneficiary designation was an unlimited gift requiring a specific designation in the POA. *Id*.

The majority of the Pennsylvania Supreme Court agreed with the trial court and held that the POA gave Rita the "power to engage in retirement plan transactions," and while that power did not specifically include the ability to change beneficiary designations, it authorized the agent to "exercise all powers with respect to retirement plans that the principal could if present." *Id*. at pp. 142-43. The court reasoned that because the POA included the exact statutory language, Rita was "authorized to change the beneficiaries of the retirement plan to the decedent's siblings as this clearly was a power the decedent also had." *Id*. at 143 (footnote omitted). The court found it significant that the statutory definition of the power to engage in insurance transactions found in § 5603(p) included much of the same language as the statutory definition of the power to engage in retirement plan transactions in § 5603(q), but specifically limited the power to change beneficiaries. *Id.* at p. 142 n.2 (citing 20 PA. CONS. STAT. ANN. § 5603(p)(3)). In contrast, the

---

[6] The opinion does not indicate whether this pension plan was established under ERISA.

10

court observed that such limitation was absent from the power to relating to retirement plan transactions, noting that "[c]learly if the legislature intended to limit the power of an agent to change the beneficiary of a retirement plan, it would have done so in Section 5603(q)." *Id*. at p. 142 n.2. Finally, the court rejected the siblings' argument that the power to change retirement plan beneficiaries had to be specifically included in the POA because it was a gift. *Id*. at p. 144. Because the POA included the statutory language "to engage in retirement plan transactions," this power included the ability to change the beneficiaries of the retirement plan. *Id*.

Here, Morrison concedes that the POA in this case does not contain specific language from § 5603(q) granting him the authority "to engage in retirement plan transactions" that would enable him to change the beneficiary designation. (ECF No. 15 at p. 5). Rather, Morrison contends that his authority to change the beneficiary designation is derived from paragraph 21 of the POA, which defines his authority to make unlimited gifts to a limited set of beneficiaries. As previously set forth above, this provision states:

> 21. **Gifts.** My Agent is authorized to give property without consideration in any amount to any one or more of the beneficiaries of my Will and any other persons and institutions with whom I have an established pattern of giving; to continue any program of gifts that I may have begun by giving property without consideration to persons, including my Agent, outright or to trusts which I have previously created for their benefit. I give my Agent this power because it is my intention that my giving program can be continued in the event of my disability.

(ECF No. 15-1 at ¶ 21). Morrison argues that under this "unlimited gift provision," he was "empowered" to make the "gift" to himself. (ECF No. 15 at pp. 5-6). He relies on the Pennsylvania Supreme Court's decision in *In re Weidner*, 938 A.2d 354, 360 (Pa. 2007), which held that a POA does not need to use the specific language as set forth in the statute, and that general language can serve to grant specific powers.

*Weidner* involved the agent's authority to change the beneficiary of a life insurance policy. The POA expressly incorporated the POA statute and expressly granted the agent the power and authority to do any act therein. *Id*. The court observed that by doing so, the decedent evinced her intent to confer broad authority to her attorneys-in-fact. *Id*. The court held that "general language may be used to show the 'similar intent on the part of the principal,' if such general language, according to its common usage, encompasses such power or powers." *Id*. (quoting *In re Estate of Reifsneider*, 610 A.2d 958, 962 (Pa. 1992)).

Unlike *Weidner*, the POA in this case does not incorporate the powers enumerated in the POA statute, such that it demonstrates Jacobs' intent to empower Morrison to do all things permitted by the statute, including the power to change the beneficiary designation of the retirement plan. In fact, the POA contains very specific language with respect to Morrison's authority regarding retirement matters:

> 10. **Individual Retirement Account.** My Agent is authorized to request and receive distributions from any of my Individual Retirement Accounts; to give instructions for the purchase and sale of securities in those accounts; to execute on my behalf any powers of attorney or other instruments needed for those purposes; and to endorse notes, checks, drafts and bills of exchange, and to make contributions to those accounts.

(ECF No. 15-1 at ¶ 10). Morrison's attempt to rely on the unlimited gift provision as "general language" evidencing Jacobs' intent with respect to his ability to change the beneficiary designation is without merit in light of the specific powers enumerated above.

Moreover, even if we were to ignore the specific powers enumerated in paragraph 10, and the beneficiary designation could be considered a "gift", paragraph 21 of the POA does not empower Morrison to make this particular "gift" to himself. Morrison casts the unlimited gift provision in the following light:

> The Agent was authorized to "give property without consideration in any amount (unlimited) to any one or more of the beneficiaries of my Will … including my Agent."

(ECF No. 15 at p. 5). However, the complete first clause reads "My Agent is authorized to give property without consideration in any amount to any one or more of the beneficiaries of my Will and any other persons and institutions *with whom I have an established pattern of giving[.]*" (ECF No. 15-1 at ¶ 21) (emphasis added). Jacobs' stated intent in granting this power was so "my giving program can be continued in the event of my disability." *Id*. To ignore this qualifying language and Jacobs' stated intent would render both superfluous and of no effect. Giving effect to the entire provision and Jacobs' stated intent, there is no evidence on this record that Jacobs had established a pattern of giving Morrison property such that it should have been continued in the event of his disability. Accordingly, the unlimited gift provision in paragraph 21 did not authorize Morrison to change the beneficiary designation of Jacobs' retirement account.

12

## V. Conclusion

In sum, Morrison is not entitled to recover benefits from the Plan under federal law or Pennsylvania state law. Accordingly, Morrison's Motion for Summary Judgment (ECF No. 15) will be denied and Pratt's Motion for Summary Judgment (ECF No. 33) will be granted. An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 22, 2013

cc/ecf: All counsel of record.